# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CEATS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:15-CV-01470-JRG-RSP |
| | § | |
| TICKETNETWORK, INC. and | § | |
| TICKET SOFTWARE, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is CEATS, Inc.'s Opposed Motion to Exclude Testimony and Strike the Expert Report of Dr. V. Thomas Rhyne [Dkt. # 114]. After considering the parties' briefing, the Court will **GRANT** the motion **IN PART**.

**I.  BACKGROUND**

TicketNetwork's business comprises four components. First, it markets ticket inventory owned by others directly to end users through internally owned and operated websites, such as TicketNetwork.com and TicketLiquidator.com. Kruse Decl. (Oct. 27, 2017) [Dkt. # 112-28] ¶ 4. Second, it licenses a range of products and services to independently owned, operated, and controlled third-party ticket marketers. *Id.* ¶ 5. Third, it operates a backend ticket exchange whereby ticket brokers exchange ticket inventory with one another. *Id.* ¶ 6. Fourth, it operates a call center for its internal and third-party websites for facilitating purchases by end users. *Id.* ¶ 9.

In 2010, CEATS sued TicketNetwork for patent infringement. The parties settled mid-trial and later executed a license agreement concerning 16 of CEATS's patents. Settlement & License Agreement for CEATS Patents (Mar. 28, 2012) [Dkt. # 38-5] (hereafter, "the Agreement").

This lawsuit concerns TicketNetwork's alleged breach of the Agreement. CEATS contends TicketNetwork has not performed its obligation under Paragraph 5.2 of the Agreement to pay CEATS $0.50 for each "Transaction," which is "[t]he purchase of one ticket directly using an online ticketing system freely available via the Internet from a general purpose computer, without the use of any dedicated resident ticket vending software on such computer, providing such system includes the Subject Functionality." CEATS' Standard Licensing Rates [Dkt. # 38-34]; *see also* Agreement [Dkt. # 38-5] ¶ 1.13 (defining "Transaction" to have "the meaning set forth in CEATS' Standard Licensing Rates for Licenses Under the Patent Portfolio Held by CEATS, Inc."). "Subject Functionality" means "[f]unctionality in a system or method that provides (i) an interactive seat map and (ii) additional information or an additional display of information in response to user interaction with the display of seats in such seat map by placing a mouse indicator over the seat map." CEATS' Standard Licensing Rates [Dkt. # 38-34]; Agreement [Dkt. # 38-5] ¶ 1.10 (defining "Subject Functionality" to have "the meaning set forth in CEATS' Standard Licensing Rates for Licenses Under the Patent Portfolio Held by CEATS, Inc.").

The functionality at issue concerns TicketNetwork's web interface that allows a user to purchase tickets on-line. In the image below, which is exemplary only, the interface

(everything inside the red dashed line) includes an available ticket listing panel (blue) on the left side that is populated by a listing of sections with available seats. The right side of the interface (green dashed line) is a venue diagram providing a display of seats. When a user rolls a mouse icon over a section of available seats in the left (blue) panel, the interface highlights the physical location of those seats in the right venue-diagram panel.



The parties' main dispute concerns the meaning of "seat map" in the definition of Subject Functionality and how it applies to this layout. TicketNetwork contends the "seat map" is limited to the right panel—what CEATS calls the "venue diagram"—and the "display of seats" is the collection of seats composing the seat map along with any other elements of the event venue, such as the concert stage. Defs.' Summ. J. Reply [Dkt. # 147] at 5 n.3. CEATS agrees the "display of seats" makes up the venue diagram map and that it is separate from the available ticket list. Pl.'s Resp. to Defs.' Mot. for Summ. J. [Dkt. # 138] at 7 ("On the right-hand side of the interface . . . is a dynamic venue diagram providing a

display of seats.""); Pl.'s Sur-Reply [Dkt. # 156] at 1 ("A 'display of seats' is a subset of the larger phrase 'seat map' . . . ."). But CEATS contends the "seat map" is the entire interface (in this example, everything within the red dashed line), including the available ticket list within the left panel.

TicketNetwork summarizes the parties' positions with this graphic:



Defs.' Mot. for Summ. J. [Dkt. # 112] at 24.

Dr. Rhyne is TicketNetwork's expert on two broad subjects: (1) What constitutes use of the Subject Functionality, Rhyne Opening Rep. (Oct. 16, 2017) [Dkt. # 125-1] at 19–53, and (2) when TicketNetwork implemented the Subject Functionality, *id.* at 53–80. Rhyne is a former professor of computer engineering, *id.* at 2, an experienced programmer, *id.* at 3, and a registered practitioner with the USPTO, *id.* at Ex. A (p.4). He served as TicketNetwork's technical expert in the prior litigation. *Id.* at 7 (¶ 28).

CEATS's motion lodges two complaints concerning Rhyne's report. First, because this case concerns contract interpretation—i.e., the meaning of "Subject Functionality" in

the Agreement—Rhyne may not provide conclusions as to the meaning of that term or the parties' intent in reaching the Agreement. Second, Rhyne improperly relies on cherry-picked screen shots and hearsay. CEATS's Motion [Dkt. # 114] at 7–9 (attacking the reliability of ¶¶ 119–20, 195, 197, 200–01, 205–06, and 208).

## II. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

District courts are accorded broad discretion in making Rule 702 determinations. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit has identified various factors the district court may consider, the common nature of these factors directs the trial court to consider as its ultimate inquiry whether the expert's testimony is sufficiently reliable, relevant, and non-prejudicial to be helpful to the finder of fact and thus to warrant admission at trial. *United*

*States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. . . . Thus, while exercising its role as a [gatekeeper], a trial court must take care not to transform a *Daubert* hearing into a trial on the merits") (quoting Fed. R. Evid. 702 advisory committee note). Instead, the Court's role is limited to that of a gatekeeper, ensuring the disputed evidence is at least sufficiently reliable and relevant so as to be appropriate for the jury's consideration. *See Pipitone*, 288 F.3d at 249–50. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Finally, in addition to Fed. R. Evid. 702, courts should consider other applicable rules when assessing expert testimony. *Daubert*, 509 U.S. at 595. Fed. R. Evid. 703, for example, provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the

particular field in forming opinions or inferences upon the subject." *Id.* (quoting the rule). And Fed. R. Civ. P. 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* (quoting the rule).

### III. DISCUSSION

First, Dr. Rhyne may not testify as to what constitutes (or doesn't constitute) use of the Subject Functionality within the meaning of the Agreement or the parties' intent at the time of execution. This litigation concerns contract interpretation and the meaning of Subject Functionality, which is primarily for the factfinder to decide. *See North Shore Energy, LLC v. Hawkins*, 501 S.W. 598, 601 (Tex. 2016) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)) ("[d]eciding whether a contract is ambiguous is a question of law for the court"). Even if the contract language is ambiguous, it is the jury's role to decide the intent of the parties. *See Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983) ("The trier of fact must resolve the ambiguity by determining the true intent of the parties."). Here, Rhyne's technical knowledge may be helpful to the jury in understanding the meaning of terms like "seat map" within the industry and the functionality of the software at issue, but he has no helpful knowledge of the meaning of contract terms like "Subject Functionality" (which has no meaning in the industry) or what the parties intended thereby.

Second, the Court rejects CEATS's attacks on the reliability of Rhyne's testimony because the paragraphs about which CEATS complains relate to facts "of a type reasonably

relied upon by experts in the particular field in forming opinions or inferences upon the subject." Here, even though the Court will restrict Rhyne's ability to express an ultimate conclusion as to what constitutes use of the Subject Functionality, Rhyne may opine on the structure and function of certain software at issue. The paragraphs about which CEATS complains fall within the type of otherwise inadmissible hearsay that may be considered for such subject matter.

Rather than preclude Rhyne from testifying concerning these paragraphs, vigorous cross-examination and presentation of contrary evidence by CEATS are the better options. Moreover, CEATS may object to the admissibility of the facts and data on which Rhyne relies. And if those facts and data are inadmissible, TicketNetwork may only disclose them to the jury if their probative value in helping the jury evaluate Rhyne's opinion substantially outweighs their prejudicial effect. *See* Fed. R. Civ. P. 703.

### IV. CONCLUSION AND ORDER

The Court **GRANTS** CEATS, Inc.'s Opposed Motion to Exclude Testimony and Strike the Expert Report of Dr. V. Thomas Rhyne [Dkt. # 114] **IN PART**. Specifically, the Court **PRECLUDES** Dr. Rhyne from opining as to what constitutes (or doesn't constitute) use of the Subject Functionality, the parties' intent or understanding of the Agreement at the time of execution, and whether and to what extent any payment pursuant to the Settlement Agreement is due to CEATS from TicketNetwork.

As guidance, Dr. Rhyne may testify as set forth in his report limited as follows, but to the extent the following specifically excluded sections or limitations conflict with the

Court's order in the previous paragraph, the previous paragraph controls.

| Paragraphs | Excluded Portion / Nature of Limitation |
|---|---|
| Headings | Entirety |
| 2, 19 | Entirety |
| 20 | Exclude: "(3) TicketNetwork and CEATS agreed, at least of March 14, 2012, that TicketNetwork was not utilizing the Subject Functionality on any of its websites." <br><br> Also, Dr. Rhyne may not testify that TicketNetwork used the Subject Functionality on its websites prior to December 19, 2011, but may testify TicketNetwork used Seat Map Mouseover prior to that date. <br><br> Similarly, Rhyne may not testify that TicketNetwork ceased using the Subject Functionality on its websites as of December 19, 2011, but may testify TicketNetwork ceased using Seat Map Mouseover as of that date. |
| 21, 22 | Entirety |
| 23 | ", both of which do not constitute use of the Subject Functionality." |
| 24, 25 | In both paragraphs, exclude: ", which does not constitute use of the Subject Functionality." <br><br> In Para. 24, replace "the Subject Functionality" in the first sentence with "Seat Map Mouseover" |
| 43–63, 65–67 | Entirety |
| 72 | Exclude first sentence |
| 73–76 | Entirety |
| 77 | Exclude last sentence |
| 80 | First sentence of each paragraph |
| 81 | Entirety |
| 82 | First sentence of each paragraph |

| | |
|---|---|
| 83 | Entirety |
| 84 | Exclude second sentence |
| 85 | Exclude last two sentences |
| 86 | Entirety |
| 88 | Exclude: "is also consistent with this requirement of Subject Functionality and" |
| 90, 95, 98 | Entirety |
| 100 | Exclude last sentence |
| 101 | Entirety, except for first sentence |
| 102–109 | Entirety |
| 112 | Dr. Rhyne may testify that placing the mouse indicator over the ticket group does not result in a display of information, but may not opine as to whether that is or is not "Subject Functionality" |
| 113 | Exclude: "as confirmed by CEATS' expert, Dr. Jones, and its attorney, Mr. Nadel, during the prior litigation." |
| 114 | Exclude the content of footnote 4. |
| 121 | Exclude last sentence |
| 131 | Exclude all but the first sentence |
| 138 | Entirety |
| 139 | Exclude: "and that CEATS was well aware of this implementation after having inspected TicketNetwork's source code in 2011" and last sentence |
| 145–147 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |
| 148 | In the first sentence, replace reference to "Subject Functionality" with "Seat Map Mouseover" <br> Exclude last sentence |
| 149 | Replace "Subject Functionality" with "Seat Map Mouseover" |

| | |
|---|---|
| 150 | Exclude last sentence |
| 151, 161, 162 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |
| 164 | Exclude "which, as I discussed above" to the end |
| 169, 172, 178 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |
| 179 | Exclude last sentence |
| 180, 181, 192, 198, 202 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |
| 210 | Exclude second sentence |
| 211 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |
| 213, 215 | Entirety |
| 220, 222, 226 | Replace all references to "Subject Functionality" with "Seat Map Mouseover" |

**SIGNED this 17th day of January, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE