IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CEATS, INC., | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:15-CV-01470-JRG |
| TICKETNETWORK, INC., TICKET SOFTWARE, LLC, | § § § § | |
| *Defendants*. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff CEATS, Inc.'s ("CEATS") Motion for Attorneys' Fees (the "Motion"). (Dkt. No. 337.) Having considered the same, the Court is of the opinion that the Motion should and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** to the extent discussed herein.

**I.    BACKGROUND**

  A.    Litigation History Preceding This Case

In 2010, CEATS filed suit against multiple defendants, including Defendants TicketNetwork, Inc. and Ticket Software, LLC (collectively, "TicketNetwork"). (Dkt. No. 26 at 1.) CEATS asserted multiple claims from four of its patents against the accused defendants. The trial in that action commenced on March 12, 2012. (*Id.* at 3.) A few days into the trial, CEATS and TicketNetwork settled and entered into a term sheet (the "Agreement"). (*Id.*) TicketNetwork was subsequently dismissed from that case. (*Id.*)

Pursuant to the Agreement, CEATS granted TicketNetwork a license to sixteen of its patents in exchange for a lump sum payment and future royalties. (Dkt. No. 38-5.) Under the

Agreement, TicketNetwork would pay CEATS a royalty of 50 cents for every transaction that used "subject functionality" as defined by the Agreement and CEATS' Standard Licensing Rates for Licenses Under the Patent Portfolio. (*See* Dkt. No. 38-5 at 2; Dkt. No. 38-34.) TicketNetwork also agreed that it would not "take part in, assist in or cooperate with the efforts or activities of any person or entity unless ordered to do so by court order or other legal compulsion with respect to any litigation, administrative proceeding (including but [sic] limited to any proceeding before the United States Patent and Trademark Office), or undertaking related to the [licensed patents]." (Dkt. No. 38-5 at § 10.)

B. Procedural History in This Case

On August 28, 2015, TicketNetwork sued CEATS in this case, seeking a declaratory judgment that (1) the royalty provisions of the Agreement were unenforceable, (2) TicketNetwork did not infringe any of CEATS's patents, and (3) CEATS's patents, including the sixteen licensed patents, were invalid. (*See* Dkt. No. 1 at 2, 5.) CEATS subsequently filed counterclaims, arguing that TicketNetwork's declaratory judgment action and its failure to pay royalties breached the Agreement. (Dkt. No. 26.) CEATS sought relief in the form of damages, prejudgment interest, accounting, and "CEATS' costs of suit." (*See id.* at 5.)

On January 23, 2017, CEATS sent a letter to TicketNetwork claiming that TicketNetwork owed CEATS $105,272,160.00 for breaching the Agreement. (Dkt. No. 296-3 at 4.) On September 22, 2017, CEATS served TicketNetwork with the damages report of Robert McSorley ("McSorley"). (*See* Dkt. No. 293-2 at 1.) McSorley calculated the total royalty owed by TicketNetwork to be $101,147,076.00. (*See id.* at 17.)

On October 23, 2017, TicketNetwork sent a letter to CEATS contending that McSorley's $101,147,076.00 royalty calculation was "wholly excessive" and offering a $224,675.51 tender to

2

settle the case. (Dkt. No. 293-5.) CEATS rejected TicketNetwork's offer on January 2, 2018, in reliance on an updated $25,344,275.00 damages model set forth in McSorley's supplemental damages report.[1] (*See* Dkt. No. 293-6 at 1 (Letter from J. Randy Roeser on behalf of CEATS); Dkt. No. 293-4 at 27 (Supplemental Expert Report of Robert McSorley).) After engaging in motions practice concerning the availability statutory attorneys' fees, the parties agreed to take up the issue after trial pursuant to Federal Rule of Civil Procedure 54. (*See* Dkt. No. 309 at 7 (citing Dkt. No. 278 at 116:5–25 (Jan. 22, 2018 A.M. Trial Tr.)); *see also* Dkt. No. 252 (Magistrate Judge Payne's Order Overruling TicketNetwork's Objections Concerning Attorneys' Fees).)

A jury trial commenced in this case on January 22, 2018. On January 25, 2018, the jury returned a unanimous verdict finding that TicketNetwork breached the Agreement and that CEATS should recover $459,800.00 in compensatory damages from TicketNetwork for the breach. (Dkt. No. 273.) The Court entered Final Judgment in favor of CEATS on September 26, 2018, and declared CEATS the prevailing party pursuant to Federal Rule of Civil Procedure 54(d), Local Rule CV-54, and 28 U.S.C. § 1920. (Dkt. No. 331 at 3.) The Court also instructed the parties that "CEATS may pursue its claim for attorneys' fees, but CEATS is directed to present its claim for any such fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(A–C) and may by subsequent motion seek an award of such fees. TicketNetwork may oppose same through typical motion practice in response to any such motion from CEATS." (*Id.* at 2.)

Pursuant to Federal Rules of Civil Procedure 54(d)(2)(A), CEATS now seeks $1,323,450.75 in attorneys' fees under Texas Civil Practice & Remedies Code § 38.001(8) as the prevailing party in this case. (Dkt. No. 337 at 1.) CEATS also asks the Court for $55,000.00 in

---

[1] McSorley's damages model was revised after Magistrate Judge Payne resolved a discovery dispute between the parties by instructing TicketNetwork to identify a program that would allow CEATS to review TicketNetwork's produced transaction data. (*See* Dkt. No. 119 15:24–18:8, 18:44–45, 80:15-23 (Oct. 23, 2017 Hearing Tr.); Dkt. No. 293-4 at 27.)

3

reasonable attorneys' fees in the event an appeal is made to the Fifth Circuit Court of Appeals and $40,000.00 in the event a petition for writ of certiorari is made to the Supreme Court of the United States. (*Id.* at 15.) TicketNetwork opposes the fee request on three grounds: (1) statutory attorneys' fees are precluded by CEATS' excessive presentment demand, (2) "a top-line reduction of $105,307 [is warranted] for [improperly] claimed [] legal assistant time," and (3) a "2/3 reduction [is warranted] . . . due to CEATS' lack of success and failure to demonstrate billing judgment." (Dkt. No. 345 at 1 & n.2.)

## II. LEGAL STANDARD

A party "may recover reasonable attorney[s'] fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). "If attorney[s'] fees are proper under section 38.001(8), the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009); *accord Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) (explaining that § 38.001(8) "provides the prevailing party in a breach of contract action with a mandatory award of reasonable attorneys' fees"). However, "[a] creditor who makes an excessive demand upon a debtor is not entitled to attorney[s'] fees for subsequent litigation required to recover the debt." *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981). "[T]he party seeking to recover attorney[s'] fees carries the burden of proof." *Smith*, 296 S.W.3d at 547.

The amount of attorneys' fees under Texas and federal law is determined by (1) "calculate[ing] a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate" and then (2) considering whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Rutherford*

4

*v. Harris Cty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999); *accord El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012); *see also Omni USA, Inc. v. Parker Hannifin Corp.*, 964 F. Supp. 2d 805, 842 (S.D. Tex. 2013) (noting the determination of reasonable attorneys' fees under Texas law is "virtually identical to the *Johnson* factors used by the Fifth Circuit") (internal quotations and citations omitted). The twelve *Johnson* factors include:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citing *Johnson*, 488 F.2d at 717–19). The Fifth Circuit has further explained that "of the *Johnson* factors, [] court[s] should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

**III.  DISCUSSION**

The Court first addresses the propriety of statutory attorneys' fees in this case and then turns its determination of a reasonable fee award.

    A.    <u>CEATS is Entitled to Attorneys' Fees</u>

TicketNetwork argues that "CEATS' initial demand for over $105 million, more than nearly $90 million less [sic] than its own best-case damages model presented to the jury and more than 200 times the jury award, was unreasonable and constitutes an excessive demand" that precludes awarding attorneys' fees. (Dkt. No. 345 at 6.) TicketNetwork also argues that CEATS' various damages numbers improperly "applied a $1 royalty, double the contract's $0.50 rate, to

5

every ticket sale it alleged TicketNetwork had or would make from April 2012 through April 2019, without regard to whether the sales were made using the subject functionality or had yet to occur." (*Id.* at 3.) Even after CEATS received access to "TicketNetwork's sales data reflecting total ticket sales for the period from March 29, 2012 to May 31, 2017," the $101,147,076.00 calculated by CEATS' damages expert for the asserted breach ignored TicketNetwork's actual sales data and repeated CEATS' earlier analytical errors. (*Id.* at 3–4.) Contrary to CEATS' argument that it had to compel production of TicketNetwork's sales data, TicketNetwork contends that CEATS only "needed common, widely available database software to [access] . . . [TicketNetwork's] transaction data," and Judge Payne "simply ordered that TicketNetwork provide the name of the program . . . to open the data." (*See id.* at 7–8.)

Additionally, TicketNetwork argues that CEATS' closing arguments to the jury that $16,406,918.00 "reflected the proper amount due if all disputes regarding the parties' contractual commitments and breach were resolved in CEATS' favor" illustrates the unreasonableness of CEATS' previous demands. (*Id.* at 9.) TicketNetwork also argues that "CEATS' conduct in this case conclusively establishes that tender of a reasonable sum was futile, excusing the tender obligation." (*Id.* at 8–9.) Specifically, CEATS rejected TicketNetwork's unconditional settlement tender of $224,675.51 in view of a $25,344,275.00 damages amount[2] that exceeded CEATS' ultimate request to the jury. (*Id.* at 9.)

In response, CEATS argues that its "demands throughout the lawsuit were not excessive, as they were neither unreasonable nor made in bad faith." (Dkt. No. 337 at 9.) Its "presentments were reasonably made given TicketNetwork's own public statements and TicketNetwork's lack of production." (Dkt. No. 348 at 3; *see also* Dkt. No. 337 at 9–10.) Additionally, CEATS argues

---

[2] Calculated by CEATS' damages expert. (*See* Dkt. No. 293-Exhibit 6 at 1; Dkt. No. 293-Exhibit 4 at 27.)

6

that it could not access TicketNetwork's sales data until after Judge Payne ordered TicketNetwork to provide the program to open underlying files. (Dkt. No. 348 at 2.) After considering TicketNetwork's sales data in light of CEATS' interpretation of the Agreement, "CEATS adjusted its demand, amended its expert report and reduced the overall demand to a total of $25,344,275 through 2019," which was further narrowed to $16,406,918.00 for the time period in dispute at trial. (Dkt. No. 337 at 10.) CEATS also argues that although TicketNetwork claims to have tendered the full amount owed, its $224,675.51 tender was less than half of the jury's $459,800 award. (*Id.* at 9.) Further, CEATS argues that any alleged double-counting of TicketNetwork's transactions was attributed to CEATS' reasonable interpretation "for certain fulfillment orders, [where] two Transactions occur on one ticket order, when that ticket comes from a source other than the one the end user engages." (Dkt. No. 348 at 2 (citing Dkt. No. 191-1); *see also* Dkt. No. 337 at 11 n.10.)

The Court finds that CEATS did not make an excessive demand. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (explaining that "the allowance of attorney[s'] fees rests with the sound discretion of the trial court"); *accord Schwarz v. Folloder*, 767 F.2d 125, 127 (5th Cir. 1985) ("In general, awards of costs and attorney[s'] fees—like other aspects of trial management—are entrusted to the sound discretion of the trial court."). Although "a creditor who makes an excessive demand on a debtor is not entitled to attorney[s'] fees for subsequent litigation required to recover the debt," a demand is not excessive simply because it is greater than what the jury later determines is actually due. *See Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981); *Barnes v. LPP Mortg., Ltd.*, 358 S.W.3d 301, 308 (Tex. App.—Dallas 2011, pet. denied). While it may be persuasive evidence of an excessive demand, "it cannot be the only criterion for determination . . . especially where the amount due is unliquidated." *Findlay*, 611

7

S.W.2d at 58. The debtor must show that the creditor (1) acted unreasonably or in bad faith in demanding more than was due, and (2) refused or clearly indicated tender of the amount due would be refused. *Chavez v. State Farm Lloyds*, 746 F. App'x 337, 344 (5th Cir. 2018); *see also e.g.*, *Hernandez v. Lautensack*, 201 S.W.3d 771, 777 (Tex. App.—Fort Worth 2006, pet. denied).

Although CEATS' initial $105 million demand at first seems overwhelming when viewed against the jury's ultimate award of approximate $460 thousand, CEATS repeatedly adjusted its damages model downward in response to receipt of TicketNetwork's actual sales data and the Court's instruction to narrow the time period for damages. (*See* Dkt. No. 248 at 2 ("CEATS's claims relating to future ticket sales by TicketNetwork are not ripe").) This is common as discovery continues and trial strategies crystalize. Additionally, CEATS justified its rejection of TicketNetwork's $224,675.51 tender—which was less than half the jury's verdict (even accounting for interest)—by relying on the opinion of its *independent* damages expert. (*See* Dkt. No. 293-6 at 1 & n.1 (citing November 28, 2017 Supplemental Expert Report of Robert McSorley).) The Court is persuaded that CEATS reasonably believed in the merits of its damages model and sought a jury's determination of the appropriate unliquidated damages owed. *See Findlay*, 611 S.W.2d at 58 (Tex. 1981). As such, the Court finds that CEATS did not act with the requisite level of unreasonableness or bad faith to warrant foreclosing an award of attorneys' fees by finding an excessive demand as a matter of law. *See Barnes v. LPP Mortg., Ltd.*, 358 S.W.3d 301, 308 (Tex. App.—Dallas 2011, pet. denied) (explaining that "[t]he dispositive inquiry for determining whether a demand is excessive is whether the creditor acted unreasonably or in bad faith"); *accord City of Waco v. Kleinfelder Cent., Inc.*, No. 6:15-CV-310-RP, 2017 WL 401281, at *3 (W.D. Tex. Jan. 30, 2017); *Edison Glob. Circuits, LLC v. Ingenium Tech. Corp.*, Civ. No. H-

11-1207, 2012 WL 1884083, at *3 (S.D. Tex. May 22, 2012). Accordingly, CEATS is entitled to statutory attorneys' fees under Texas Civil Practice and Remedies Code § 38.001(8).

B.  CEATS' Reasonable Fee Award

CEATS argues that the $1,323,450.75 in requested attorneys' fees are reasonable and necessary under the *Johnson* factors and the lodestar method. (Dkt. No. 337 at 14.) As an initial matter, the Court finds that the CEATS' requested fee rates are reasonable. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (noting that "trial courts are considered experts as to the reasonableness of attorney[s'] fees"). Since TicketNetwork admits that CEATS' requested rates are reasonable,[3] the remaining issues for the Court include: (1) hourly reductions corresponding to non-attorney fees in the context of the Court's lodestar calculation, (2) whether any reductions are warranted to reflect billing judgment, and (3) whether any reductions are warranted to reflect CEATS' level of success. *See Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989) ("When . . . the rate at which the attorney requests the lodestar be computed . . . is within the range of prevailing market rates, the court should consider th[at] rate when fixing the hourly rate to be allowed. When that rate is not contested, it is prima facie reasonable." (footnote omitted)); *see also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568–69 (5th Cir. 2006) ("As the hourly rates submitted by the defense were not disputed, the sole factor for the court's determination was the reasonable number of hours expended." (footnote omitted)).

---

[3] (*See* Dkt. No. 348-3 at 2 ("REQUEST FOR ADMISSION NO. 2: Admit that the hourly rates charged in This Litigation by Haltom & Doan and HamptonHolley, as presented in CEATS' Motion for Attorney's Fees, are reasonable. ANSWER: TicketNetwork responds as follows: Admitted.").)

### 1. *Lodestar Reduction for Non-compensable Non-Attorney Time*

TicketNetwork faults CEATS for not providing evidence to justify 679.4 hours of work performed by paralegals and legal assistants, amounting to $105,307, and "shift[ing] its burden to TicketNetwork and the Court to sift through each entry—many of which are heavily redacted—to attempt to assess whether the work is substantive legal work or clerical in nature." (*See* Dkt. No. 345 at 14–15.) In response, CEATS argues that the non-attorneys for whom CEATS seeks fees have "over 50 years of combined experience and each having received specialized paralegal training." (*See* Dkt. No. 348 at 4 & n.6 (citing Doan Declaration at 4).) Despite this, CEATS is willing to disclaim "$7,517.50 of its legal assistant time entries [that] could . . . be arguably directed to work not traditionally performed by attorneys." (*See id.*)

Having reviewed the billing invoices proffered by CEATS' counsel, the Court finds that CEATS is not entitled to $19,561.00 in requested non-attorney fees. To be entitled to fees for work performed by paralegals or legal assistants, CEATS must provide not only evidence of the time spent, rate charged, and tasks performed, but also, evidence of "(1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; [and] (3) the nature of the legal work performed." *El Apple I*, 370 S.W.3d at 763; *see also All Seasons Window & Door Mfg. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.) (explaining that non-attorney fees are compensable "to the extent that the work performed has traditionally been done by any attorney") (internal citations omitted). CEATS has not demonstrated that the following categories of task entries involved substantive legal work traditionally performed by an attorney: (1) task entries that do not differentiate time spent preparing working documents for attorneys, and (2) task entries that are so wholly redacted that the Court is unable to ascertain the nature of the underlying

task. (*See generally*, Dkt. Nos. 337-4, 337-5, 337-6, 337-8, 337-9, 337-11, 337-13.) Accordingly, CEATS is not entitled to the following non-attorney fees:

| Support Staff | Rates | Hours | Total Fees |
|---|---|---|---|
| Jennifer Garrett | $155.00 | 29.8 | $4,619.00 |
| Linda Burks | $155.00 | 6 | $930.00 |
| Michael Thornberry | $155.00 | 78.7 | $12,198.50 |
| Timothy Foster | $155.00 | 11.7 | $1,813.50 |
| **Grand Total** | | | $19,561.00 |

Therefore, the Court reduces CEATS' $1,323,450.75 fee request by $19,561.00 to reach a lodestar amount of $1,303,889.75. *See Saizan*, 448 F.3d at 800 (explaining that there "exists a strong presumption of the reasonableness of the lodestar amount").

### 2. *Billing Judgment and Secretarial Time*

TicketNetwork next argues that CEATS' fee award should be reduced because CEATS failed to demonstrate billing judgment. (Dkt. No. 345 at 10, 12.) Specifically, TicketNetwork argues that CEATS has not demonstrated, beyond offering conclusory statements, that substantive entries, tasks, or time were excluded in an exercise of billing judgment. (*See* Dkt. No. 345 at 12.) In response, CEATS represents to the Court that its requested attorneys' fees already exclude, as an exercise of billing judgment, $57,270.50 in incurred attorneys' fees. (Dkt. No. 337 at 14–15 & n.11; Dkt. No. 337-2 ¶¶ 9, 15–18 (Declaration of Jennifer Doan on behalf of CEATS) [*hereinafter* Doan Declaration].)

The Court finds that CEATS has properly documented its exercise of billing judgment. *See Saizan*, 448 F.3d at 799 ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."); *Walker v. U.S. Dep't of Housing*

11

*& Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (noting burden is on plaintiff to show he exercised billing judgment). Although CEATS's counsel could have provided more detailed documentation of their billing judgment reductions, CEATS' fee request identifies "the hourly rates, hours billed, and total reasonable and necessary fees incurred but not billed to CEATS for which CEATS is not seeking reimbursement":

**TOTALS Reduced Hours on Bills**

| Attorneys | Rates | Hours | Total Fees |
|---|---|---|---|
| Jennifer H. Doan | $495.00 | 2.7 | $1,336.50 |
| Darby V. Doan | $425.00 | 1.4 | $595.00 |
| Joshua R. Thane | $425.00 | 9.9 | $4,207.50 |
| J. Randy Roeser | $275.00 | 44.6 | $12,265.00 |
| Cole A. Riddell | $195.00 | 67 | $13,065.00 |
| Kyle R. Akin | $195.00 | 22.2 | $4,329.00 |
| **Support Staff** | | | |
| Michael Thornberry | $155.00 | 1.3 | $201.50 |
| | | | **$35,999.50** |

(Doan Declaration ¶¶ 9, 17.) These unbilled hours correlate with the billing invoices submitted by CEATS' counsel. (*See* Dkt. No. 337-3 at 5; Dkt. No. 337-4 at 9; Dkt. No. 337-5 at 13; Dkt. No. 337-6 at 17; Dkt. No. 337-8 at 17; Dkt. No. 337-9 at 5; Dkt. No. 337-12 at 4–5.) Additionally, CEATS has voluntarily disclaimed the following incurred fees "[i]n an effort to narrow the disputes between the parties and lessen the burden on the Court":

### Additional Hours Reduced on Bills

| Attorneys | Rates | Hours | Total Fees |
|---|---|---|---|
| James N. Haltom | $495.00 | 5.3 | $2,623.50 |
| Jennifer H. Doan | $495.00 | 0.7 | $346.50 |
| Darby V. Doan | $425.00 | 0.4 | $170.00 |
| Joshua R. Thane | $425.00 | 2.4 | $1,020.00 |
| J. Randy Roeser | $275.00 | 19.6 | $5,390.00 |
| Cole A. Riddell | $195.00 | 31.1 | $6,064.50 |
| Kyle R. Akin | $195.00 | 17.8 | $3,471.00 |
| **Support Staff** | | | |
| Michael Thornberry | $155.00 | 3.3 | $511.50 |
| Timothy Foster | $155.00 | 0.1 | $15.50 |
| Jennifer Garrett | $155.00 | 10.7 | $1,658.50 |
| | | | **$21,271.00** |

(Doan Declaration ¶ 18.) TicketNetwork, on the other hand, has not identified any specific or representative hour entries as excessive or duplicative. From the Court's review of CEATS' proffered billing invoices, the entries therein show work reasonably directed to the prosecution of this case. As such, the Court finds that additional billing judgment reductions are not warranted because CEATS has sufficiently demonstrated that its legal team exercised billing judgment.

    3.  *Fee Award Reduction Reflecting CEATS' Level of Success*

TicketNetwork argues that CEATS' fee award should be further reduced to reflect CEATS' lack of success at trial. (Dkt. No. 345 at 15.) Specifically, TicketNetwork argues that since CEATS presented a $16,406,918.00 damages figure to the jury but was only awarded $459,800.00 in damages—"less than 3% of CEATS' jury demand," "it would be fundamentally unfair to saddle [TicketNetwork] with all fees and costs [that] Plaintiff[] seek[s]." (*See* Dkt. No. 348 at 10–11 (quoting *Santamaria v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-692, 2007 U.S. Dist. LEXIS 73045, at *18 (N.D. Tex. Sept. 30, 2007)) (internal quotation marks omitted).) "Since CEATS' degree of

success is mimimal," TicketNetwork requests that the Court apply a "2/3 reduction"[4] to CEATS' fee award. (*See* Dkt. No. 345 at 10, 12.)

CEATS responds that the cases relied on by TicketNetwork for reducing CEATS' fee award for lack of success involved parties that obtained success on just some of their asserted claims. (Dkt. No. 348 at 5 n.8.) CEATS contends that it, however, prevailed on all the issues and courts have awarded attorneys' fees where a party is successful on all claims yet the amount awarded is less than the amount sought. (*Id.* at 5 (citing Dkt. No. 337 at 12–13.[5]))

The Court is persuaded that CEATS' fee award should be reduced to reflect its level of success in this case. When awarding attorneys' fees, Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009). When adjusting a prevailing party's fee award based on the degree of success, a court need not proportionately adjust the award based on the ratio of the relief that party requested as compared to the relief ultimately obtained. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). "Nevertheless, proportionality remains 'an appropriate consideration in the typical case.'" *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Hernandez v. Hill Country Tel. Coop. Inc.*, 849 F.2d 139, 144 (5th Cir. 1988)).

Since CEATS' award of $459,800.00 is approximately one-thirty-fifth (1/35) of the $16,406,918.00 in relief that it requested from the jury, the Court finds that CEATS' partial success

---

[4] TicketNetwork included failure to demonstrate billing judgment is in its requested 2/3 reduction; however, the Court has already determined that a billing judgment reduction is not warranted. *See* discussion *supra* Part III.B.2.
[5] The Court notes that the cases identified by CEATS do not address the issue of fee reductions to reflect the prevailing party's level of success. (*See* Dkt. No. 337 at 12–13 (citing various cases).)

warrants an across-the-board fee reduction. *See* Dkt. No. 282 at 56:1 (Trial Transcript for Jan. 20, 2018) (closing argument on behalf CEATS: "It's $16 million that we've proven here"); *see also Dallas Indep. Sch. Dist. v. Woody as Next Friend of K.W.*, No. 3:15-CV-1961-G, 2018 WL 6304401, at *12 (N.D. Tex. Nov. 30, 2018) (reducing prevailing party's fee award by 50 percent, where prevailing party prevailed on two of four claims and received less one-eighteenth of her requested monetary relief); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 46–47 (D.D.C. 2012) (reducing prevailing party's fee award by 50 percent, where prevailing party requested tuition reimbursement for the 2009–2010 school year as well as prospective tuition payment for the forthcoming school year, but only received tuition reimbursement for the latter half of the 2009–2010 school year). However, this Court declines TicketNetwork's request for a 2/3 reduction. While CEATS' partial success with respect to the eighth *Johnson* factor (amount involved and the result obtained), as well as similar case law, urge this Court to reduce CEATS' fee award, this Court finds that the second *Johnson* factor (novelty and difficulty of the questions presented) persuades this Court against a 2/3 fee reduction. In particular, this Court finds that this case was not a run-of-the-mill contract dispute as it involved (1) a specific area of law—patent licensing and interpretation and (2) analysis of website functionality and source code, both of which require specialized legal and technical knowledge and experience. Accordingly, this Court concludes that the application of the *Johnson* factors to the facts of this dispute justifies an across-the-board fee reduction of 50 percent. Therefore, the Court reduces the reasonable lodestar amount of $1,303,889.75 by 50 percent to reach a fee award of $651,944.88 that reflects CEATS' level of success in this case.

## IV. CONCLUSION

For the foregoing reasons, CEATS' Motion for Attorneys' Fees (Dkt. No. 337) is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **GRANTS** CEATS a fee award of **$651,944.88** for successfully prosecuting its breach of contract claim. However, the Court finds that it is both premature and speculative to award appellate fees at this time, and thus CEATS' request for such fees is **DENIED** without prejudice. It is therefore **ORDERED** that TicketNetwork shall pay CEATS' attorneys' fees that are consistent with the Court's ruling herein. Payment shall be made no later than thirty (30) days from the date of this Order, and TicketNetwork shall promptly notify the Court by a Notice filed on the docket when such payment has been made.

**So ORDERED and SIGNED this 25th day of April, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE