**■■■■■■■■■■■**

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CEATS, INC., | |
| **Plaintiff,** | |
| v. | Case No. 2:15-CV-1470-JRG-RSP |
| TICKETNETWORK, INC. AND TICKET SOFTWARE, LLC, | **■■■■■■■■■■■** |
| **Defendants.** | **PUBLIC VERSION** |

### TICKETNETWORK'S MOTION REQUESTING THAT CEATS, INC. BE HELD IN CIVIL CONTEMPT UNDER THE COURT'S INHERENT POWER

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 2

  A.  The Court sanctioned CEATS, and CEATS did not comply. ................................. 2

  B.  Discovery revealed that CEATS could have paid but chose not to. .................... 3

III.   LEGAL STANDARD ........................................................................................... 5

IV.   ARGUMENT ........................................................................................................ 5

  A.  CEATS is in contempt of court because it failed to comply with the Court's valid sanctions order requiring payment to TicketNetwork. ................................................. 5

  B.  Given that CEATS intentionally refused to comply, continues to cause unnecessary litigation costs, sought no funds from shareholders, and requires stronger measures to enforce compliance, more sanctions are warranted. ............................................... 7

  C.  The Court can award the requested sanctions and they will effectively compensate TicketNetwork or coerce CEATS' compliance. ........................................................ 9

    1.  CEATS should pay reasonable interest on the amount due, dating back to the Court's Sanctions Order deadline (May 21, 2024). .......................................................... 9

    2.  The Court should award fees and costs incurred in litigation after the Court's Sanctions Order deadline (May 21, 2024). ........................................................... 10

    3.  Should the Court agree with TicketNetwork that attorney's fees and costs are warranted, TicketNetwork requests supplemental briefing to advocate for the proper amount. If CEATS is unable to pay the sanctions owed within thirty days of the requested civil contempt sanctions order, then all right, title, and interest in CEATS patents should be assigned to TicketNetwork. ............................................................................ 12

    4.  CEATS should pay recurring $1,000 daily fines until it fully complies with the Sanctions Order and any contempt sanctions that this Court imposes. ................................. 13

    5.  The pending appeal of this Court's previous sanctions order is irrelevant. ................... 13

  D.  Should the Fifth Circuit remand for insufficient evidence of bad faith, the Court should consider the latest entries in CEATS' pattern of deceit and willful disobedience as bad faith and reimpose the same sanctions. ............................................................... 13

V.    CONCLUSION ................................................................................................. 15

i

███████████████████

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..................................................................................5

*Chisesi v. AAA/Auto Club Fam. Ins.*,
   No. CIV. A. 08-3707, 2009 WL 2447791 (E.D. La. Aug. 10, 2009), *aff'd*, 374 F. App'x 475
   (5th Cir. 2010)..................................................................................8, 11

*Cook v. Ochsner Found. Hosp.*,
   559 F.2d 270 (5th Cir. 1977) ..................................................................9, 10, 11

*In re Dinnan*,
   625 F.2d 1146 (5th Cir. 1980) (per curiam)..................................................12, 13

*In re Grand Jury Subpoena Duces Tecum Issued on Apr. 2 2, 1991 to Recs. Custodian*,
   36 F.3d 90 (5th Cir. 1994) (*nonprecedential*)..................................................7

*Lamar Fin. Corp. v. Adams*,
   918 F.2d 564 (5th Cir. 1990) ..................................................................7

*Massachusetts Mut. Life Ins. Co. v. Williamson*,
   No. 4:15-CV-166-DMB-JMV, 2019 WL 7195318 (N.D. Miss. Dec. 26, 2019)..................5, 6

*Resol. Tr. Corp. v. Smith*,
   53 F.3d 72 (5th Cir.1995) ..................................................................13

*Sec. & Exch. Comm'n v. Faulkner*,
   No. 3:16-CV-1735-D, 2019 WL 277621 (N.D. Tex. Jan. 22, 2019)..................................12

*Seven Arts Pictures, Inc. v. Jonesfilm*,
   512 F. App'x 419 (5th Cir. 2013) (*nonprecedential*)..................................................7

*Shillitani v. United States*,
   384 U.S. 364 (1966)..................................................................................5

*Smith v. Smith*,
   194 F.3d 1309 (5th Cir. 1999) ..................................................................13

*In re Stone*,
   986 F.2d 898 (5th Cir. 1993) ..................................................................5

*Travelhost, Inc. v. Blandford*,
   68 F.3d 958 (5th Cir.1995) ..................................................................5

ii

*United States v. City of Jackson, Miss.*,
  359 F.3d 727 (5th Cir. 2004) .......................................................................5, 10, 11

*United States v. Woodberry*,
  672 F. Supp. 2d 761 (S.D. Miss. 2009), *aff'd*, 405 F. App'x 840 (5th Cir. 2010)..................10

*In re White-Robinson*,
  777 F.3d 792 (5th Cir. 2015) ................................................................9, 10, 13, 14

███████████████

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Deposition transcript of Robert Anderson taken February 20, 2025 |
| B | CEATS Inc. 2023 Financial Statements (CEATS000050) Highly Confidential – Outside Counsel Only |
| C | Fundraiser Summary Sheet (CEATS000053) Highly Confidential – Attorneys' Eyes Only |
| D | Law Firm Payments Summary (CEATS000052) Highly Confidential – Attorneys' Eyes Only |

## I.    INTRODUCTION

When parties do not comply with judicial orders, courts can hold them in civil contempt, imposing compensatory or coercive sanctions. Here, this Court's most recent Sanctions Order required CEATS to pay an additional $79,827.53 in sanctions. CEATS did not pay, claiming that it was unable to do so. But CEATS was really just ignoring the Court's Sanctions Order:

> **Q.** Well, sir, you're the Chairman of the Board and Chief Financial Officer of CEATS. If you're not proposing to pay a sanction, who would?
>
> **A.** Well, it's a moot point. I'm not going to pay the sanction.
>
> **Q.** Why not?
>
> **A.** Because I don't want to.
>
> **Q.** Oh, okay. So you would just disregard Judge Gilstrap's order because you don't want to pay the sanction; is that right?
>
> **A.** That's correct.

(Ex. A, Anderson Dep. Tr. at 54:20–55:6.) This is the extent of CEATS' reasoning for not complying with this Court's Sanctions Order. CEATS had an established mechanism for raising new funds. It had most of the necessary funds at the end of 2023, and after the Court's Sanctions Order, it acquired additional cash from its shareholders. But CEATS chose not to use these resources to satisfy this Court's Sanctions Order.

CEATS willfully disregarded this Court's order, preventing this dispute's resolution, inflicting thousands of dollars of legal fees, and frustrating CEATS' present ability to satisfy the Court's judgment. Because of its blatant disregard for this Court's Sanctions Order, TicketNetwork asks the Court to hold CEATS in civil contempt. TicketNetwork asks for the following relief:

1. CEATS should pay reasonable interest on the amount due, dating back to the Court's Sanctions Order deadline (May 21, 2024).

2. CEATS should pay fees and costs incurred in the litigation after the Court's Sanctions Order deadline (May 21, 2024).

3. CEATS should pay recurring $1,000 daily fines until it fully complies with the Sanctions Order and any contempt sanctions that this Court imposes.

4. If CEATS is unable to pay the sanctions owed within thirty days of the requested civil contempt sanctions order, then CEATS should assign all right, title, and interest in (including that for any past damages or license agreements involving) its patents to TicketNetwork.

5. Should the Fifth Circuit remand for insufficient evidence of bad faith, the Court should consider the latest entries in CEATS' pattern of deceit and willful disobedience as bad faith and reimpose the same sanctions.

## II.    FACTUAL BACKGROUND

### A.    The Court sanctioned CEATS, and CEATS did not comply.

On remand from the Fifth Circuit, the Court reassessed TicketNetwork's costs and fees to be collected from CEATS and Mr. Skane, amounting to $494,781.66 due within sixty days. (Dkt. 556 [hereinafter Sanctions Order].) The Sanctions Order's deadline for payment was May 21, 2024. (Dkt. 562 at 1.) When CEATS' deadline to pay arrived, the additional $79,827.53 imposed in the Sanctions Order remained outstanding—TicketNetwork told the Court that CEATS missed its deadline to pay. (Dkt. 562.)

CEATS responded on June 14, 2024, asserting that it lacked the money to pay and needed more time to comply. (Dkt. 566 at 2.) It claimed that "CEATS' failure to pay the additional $79,827.53 required by the Court's Order [was] due to a present inability to pay rather than any willful disobedience of the Court's Order." (Dkt. 556 at 2.) It argued that its "counsel . . . informed TicketNetwork's counsel that CEATS is actively attempting to raise funds to make the required payment." (Dkt. 556 at 2.) CEATS said that it "requires additional time to raise the necessary funds because CEATS presently does not have sufficient funds to pay the entirety of the $79,827.53 in order to comply with the Court's [Sanctions] Order." (Dkt. 556 at 2–3.)

2

The Court granted discovery into CEATS' ability to pay,[1] noting that TicketNetwork may seek more relief once the discovery period was complete. (Dkt. 580 at 2–3.)

### B.    Discovery revealed that CEATS could have paid but chose not to.

The discovery period is complete, and it revealed that despite CEATS' feigned inability to pay, it had (or could have sought) the money to pay its sanctions.

CEATS had an established mechanism in place for raising further funds. When CEATS needed money to pay for legal fees, it went to shareholders and asked them to contribute. (Ex. A, Anderson Dep. Tr. at 61:21–62:5.) Indeed, through its shareholders, CEATS raised $1,157,000 in 2023. (*Id.*; Ex. C, Fundraiser Summary Sheet.) This left CEATS with $68,821 in cash at the end of 2023. (Ex. A, Anderson Dep. Tr. at 39:23–40:1; Ex. B, CEATS Inc. 2023 Financial Statements.) CEATS did not use this money to pay its sanctions.

Moreover, even though it had an established mechanism in place for raising further funds, CEATS did not attempt to raise money for its sanctions. When Bob Anderson—CEATS' Chairman of the Board and CFO—was deposed, he revealed that CEATS has not asked any of its shareholders for additional money to pay the Sanctions Order:

> **Q.** Have you asked or has CEATS asked any of its shareholders for additional money to pay for the Court sanctions?
>
> **A.** No.
>
> **Q.** Why not?
>
> **A.** Not been asked to.
>
> **Q.** Who would ask you to do that?
>
> **A.** That would come from [CEATS' litigation management LLC,] PPSD.

---

[1] While the Court granted discovery as to Milford Skane's ability to pay, (Dkt. No. 580 at 2–3), the parties agreed to stay said discovery pending the 5th Circuit's review, (Dkt. No. 585 at 2).

**Q.** Does PPSD know that it has – that CEATS has a Court sanctions line payable on its books?

**A.** They're well aware of the liability, yes.

(Ex. A, Anderson Dep. Tr. at 50:21–24, 62:18–23.) CEATS was aware of the need to raise money, but it did not do so for its sanctions. *See id.*

To be clear, CEATS was still raising money; it just chose not to use that money for its sanctions. After the Court's Sanctions Order, CEATS fundraised an additional $30,000. (Ex. A, Anderson Dep. Tr. at 62:6–8.) But rather than put what money it had toward its sanctions, CEATS paid its appellate lawyers $60,000:

**Q.** In fact, if we look at the law firm payment document that is Exhibit 3, we see that in 2024, after the Court ordered CEATS to pay the sanction, CEATS paid $60,000 to the Ashcroft law firm, right?

**A.** Right.

**Q.** So CEATS had the money to pay TicketNetwork; it just chose to pay its own lawyers, rather than satisfy the Court-ordered sanction, correct?

**A.** Correct.

(Ex. A, Anderson Dep. Tr. at 68:23–69:2; Ex. D, Law Firm Payments Summary.) CEATS was making payments, just not the payments this Court ordered.

Indeed, as Mr. Anderson explained, CEATS was (and still is) deliberately disregarding the Sanctions Order:

**Q.** Well, sir, you're the Chairman of the Board and Chief Financial Officer of CEATS. If you're not proposing to pay a sanction, who would?

**A.** Well, it's a moot point. I'm not going to pay the sanction.

**Q.** Why not?

**A.** Because I don't want to.

**Q.** Oh, okay. So you would just disregard Judge Gilstrap's order because you don't want to pay the sanction; is that right?

**A.** That's correct.

(Ex. A, Anderson Dep. Tr. at 54:20–55:6.) Mr. Anderson was clear: even "thinking about paying" the Court's Sanctions Order has "never been put on the table" for CEATS. *Id.* at 54:16–19.

## III.    LEGAL STANDARD

It "is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (cleaned up and citation omitted). Among these powers are "those deemed necessary to protect the efficient and orderly administration of justice and those necessary to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). This being the case, "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

## IV.    ARGUMENT

### A.    CEATS is in contempt of court because it failed to comply with the Court's valid sanctions order requiring payment to TicketNetwork.

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir.1995). A movant seeking a civil contempt order "must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). District courts have held that orders to pay sanctions by a specific date along with nonpayment is sufficient to hold a party in contempt. *See Massachusetts Mut. Life Ins. Co. v. Williamson*, No. 4:15-CV-166-DMB-JMV, 2019 WL 7195318, at *2 (N.D. Miss. Dec. 26, 2019).

Here, civil contempt's three requirements are satisfied. The Court ordered that CEATS pay $494,781.66 within 60 days. (Dkt. 556.) After CEATS' deadline to pay, there was an outstanding balance of $79,827.53. (*See* Dkt. 562 (notifying the Court of CEATS' outstanding balance).) CEATS acknowledged that it still owed this amount and that it was late. (Dkt. 566 at 2.) But CEATS did not argue that it lacked knowledge of the order, that the order was invalid, or that it misunderstood how to comply—to the contrary, CEATS represented that it knew how to comply but merely needed more time to do so. (Dkt. 566 at 2–3.) Thus, CEATS has acknowledged that there was a valid court order (the Sanctions Order), it required payment within sixty days, and CEATS failed to pay. (Dkt. 566 at 2.) This is sufficient to hold CEATS in civil contempt. *See Massachusetts Mut. Life Ins. Co.*, No. 4:15-CV-166-DMB-JMV, 2019 WL 7195318, at *2.

Because CEATS had some funds, had the ability to raise more funds, but had no intention of raising further funds, it has no excuse or explanation for its noncompliance. CEATS had nearly enough cash at 2023's end and raised additional money after the Court entered its Sanctions Order:

> **Q.** And after this order, CEATS raised additional money, right?
>
> **A.** Apparently.
>
> **Q.** Well, not apparently. That's what happened, right, sir?
>
> **A.** Yeah, $30,000.
>
> **Q.** So after this order, CEATS received an additional $30,000 of funds, correct?
>
> **A.** Correct.
>
> **Q.** And at the end of 2023, CEATS had a cash balance of $68,821, right?
>
> **A.** Right.

(Ex. A, Anderson Dep. Tr. at 67:16–68:2.) Moreover, CEATS has a proven track record for raising further funds from its shareholders. (*Id.* at 61:21–62:5; Ex. C, Fundraiser Summary Sheet.) But CEATS has not attempted to raise any further money to pay the Sanctions Order. (Ex. A, Anderson

Dep. Tr. at 50:21–24, 62:18–23.) Thus, CEATS has no colorable "inability to pay" excuse or justification.

Even if CEATS had a legitimate excuse or justification (it doesn't), it would now be irrelevant. "When a party violates a court order without objecting to it, asking the court to modify or vacate it, or even informing the court why it cannot or will not obey it, the court may hold the party in contempt without first deciding whether the disobedience was justified." *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 (5th Cir. 2013) (*nonprecedential*). Here, CEATS only acknowledged that it was violating the Sanctions Order after the deadline passed. (Dkt. 566 (filed on June 13, 2024).) Thus, the Court should hold CEATS in civil contempt.

**B.      Given that CEATS intentionally refused to comply, continues to cause unnecessary litigation costs, sought no funds from shareholders, and requires stronger measures to enforce compliance, more sanctions are warranted.**

Civil contempt sanctions are appropriate to either bring a party into compliance with a court order or to compensate the complaining party for losses sustained due to noncompliance. *Am. Airlines, Inc. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). Courts look to various factors when considering civil contempt sanctions:

1. "the willfulness of the contemnor in disregarding the court's order,"
2. "the harm from noncompliance,"
3. "the financial resources of the contemnor and the burden the sanctions may impose," and
4. "the probable effectiveness of the sanction."

*Lamar Fin. Corp. v. Adams*, 918 F.2d 564 (5th Cir. 1990) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)). Here, each factor favors imposing more sanctions.

***First***, CEATS willfully ignored the Court's order, stating that CEATS was "not going to pay the sanction. . . . [b]ecause [it] do[es]n't want to." (Ex. A, Anderson Dep. Tr. at 54:24–55:2.) The Fifth Circuit has affirmed sanctions in similar cases, noting the contemnor's "deliberateness in declining to obey the contempt order" as an appropriate consideration. *See In re Grand Jury*

*Subpoena Duces Tecum Issued on Apr. 2 2, 1991 to Recs. Custodian*, 36 F.3d 90 (5th Cir. 1994) (*nonprecedential*). CEATS had the money to pay most of the sanction, obtained additional funds, could ask for more, and has paid thousands of dollars toward other debts it owes—CEATS has not paid, and will not pay, the Sanctions Order simply "[b]ecause [it] do[es]n't want to." (Ex. A, Anderson Dep. Tr. at 55:2.)

**Second**, because TicketNetwork is forced to continue litigating this case, CEATS' decision to not pay its sanctions is harming TicketNetwork. Courts in this Circuit have held that "willful ignorance of the Court's orders, including the failure to pay sanctions previously ordered" was a type of bad-faith conduct that prejudiced the other party due additional costs and attorney's fees in litigating the issue. *Chisesi v. AAA/Auto Club Fam. Ins.*, No. CIV. A. 08-3707, 2009 WL 2447791, at *3 (E.D. La. Aug. 10, 2009), *aff'd*, 374 F. App'x 475 (5th Cir. 2010). This matter should have been resolved sixty days after the Court's Sanctions Order—May 21, 2024. (Dkt. 556 at 59–60.) TicketNetwork's attorney's fees, costs, lost interest, and other expenses that follow May 21 result solely from CEATS' deciding that it is "not going to pay the sanction. . . . [b]ecause [it] do[es]n't want to." (Ex. A, Anderson Dep. Tr. at 55:2.)

**Third**, CEATS has sufficient financial resources to address these sanctions. CEATS had most of the money needed to pay the sanction at 2023's end, (*id.* at 67:25–68:2), it received an additional $30,000 after the Sanctions Order, (*id.* at 67:16–24), and it has a proven track record for raising further funds from its shareholders, (*id.* at 61:21–62:5). *See also* Ex. C, Fundraiser Summary Sheet. Indeed, CEATS was previously able to raise $30,000 in funds to pay its own lawyers after the Court's Sanctions Order. (Ex. A, Anderson Dep. Tr. at 56:25–57:2; Ex. D, Payment Summary.)

***Fourth***, the requested civil-contempt sanctions are likely to be effective in compensating TicketNetwork and obtaining CEATS' compliance with this Court's Sanctions Order. TicketNetwork seeks attorney's fees, costs, and interest since the original sanction was due. Awarding "attorneys' fees for compensatory purposes in this case . . . merely seek[s] to insure [sic] that" the Sanctions "order is followed." *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977). Adding interest, costs, and attorney's fees to total sanction amount will show CEATS that failure to comply escalates the monetary value of the sanctions it will inevitably have to pay will motivate it to pay them now. *Cf. In re White-Robinson*, 777 F.3d 792 (5th Cir. 2015) (affirming an award of sanctions in a bankruptcy proceeding of an additional $100 per day even though it amounted to over $100,000 at the time of appeal). The sanctions' additional compensatory and coercive effects are discussed further below. *See infra* Part IV.C.1–4.

### C.   The Court can award the requested sanctions and they will effectively compensate TicketNetwork or coerce CEATS' compliance.

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (quoting *United Mine Workers of America,* 330 U.S. 258, 303–04, (1947)). Here, the requested interest, fees, and costs will compensate TicketNetwork for the losses it sustained due to the tardy payment and the legal costs from pursuing payment. Moreover, the requested $1,000 daily fines and order conditioning assignment of CEATS' intellectual property to TicketNetwork is a coercive sanction that will increase the odds of compliance. Finally, that an appeal is pending over the original order is irrelevant, for CEATS has not requested that the Sanctions Order be stayed.

#### 1.   CEATS should pay reasonable interest on the amount due, dating back to the Court's Sanctions Order deadline (May 21, 2024).

Because interest compensates TicketNetwork for the time-value of the sanctions that

CEATS deliberately delayed, interest is a valid compensatory civil contempt sanction. "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed . . . to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (quoting *United Mine Workers of Am.,* 330 U.S. at 303–04). Here, CEATS has already agreed to pay interest on the amount owed, acknowledging the "inconvenience" to TicketNetwork. (Dkt. 566 at 2.) Moreover, awarding interest on the outstanding $79,827.53 under this Court's Sanctions Order compensates TicketNetwork for the value lost in not controlling these funds since they were due. Thus, an award of interest since May 21, 2024, is warranted.

### 2. The Court should award fees and costs incurred in litigation after the Court's Sanctions Order deadline (May 21, 2024).

The Fifth Circuit has endorsed the award of attorney's fees in the contempt context,[2] and it has affirmed civil contempt sanctions that include attorney's fees.[3] Unlike some other circuits that hold a "showing of 'bad faith' or 'willful disobedience' on the part of the contemnor is required to justify an award of attorney's fees," the Fifth Circuit "has consistently held that good faith is not a defense to a finding of civil contempt." *City of Jackson*, 359 F.3d at 735 n.25; *see also United States v. Woodberry*, 672 F. Supp. 2d 761, 765 n.1 (S.D. Miss. 2009), *aff'd*, 405 F. App'x 840 (5th Cir. 2010).

Here, awarding attorney's fees that post-date CEATS' May 21, 2024, deadline is necessary to compensate TicketNetwork. "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Cook*, 559 F.2d at 272. The

---

[2] *Cook*, 559 F.2d at 272.

[3] *In re White-Robinson*, 777 F.3d 792, 797–98 (5th Cir. 2015) (holding that a bankruptcy court did not abuse its discretion when—as contempt sanction for law firm's refusal to pay unstayed sanctions orders while an appeal was pending—it ordered firm to pay opposing party's expenses and imposed additional charge of $100 per day to compel compliance with its orders).

"benefits afforded by" the Sanctions Order "might be diminished by the attorneys' fees necessarily expended in bringing an action to enforce that order violated by the disobedient parties." *Id.* But for CEATS' unwillingness to pay the imposed sanctions, TicketNetwork would not have incurred any of the subsequent legal fees. This being the case, an award of fees is necessary to ensure TicketNetwork does not bear the burden of CEATS' deliberate disobedience.

Moreover, even if bad faith were necessary to awarding attorney's fees upon a finding of civil contempt (it's not, *see City of Jackson*, 359 F.3d at 735 n.25), CEATS acted in bad faith. "[W]illful ignorance of the Court's orders, including the failure to pay sanctions previously ordered" is a type of bad-faith conduct that prejudiced the other party due to incurring additional costs and attorney's fees in litigating the issue. *Chisesi*, No. CIV. A. 08-3707, 2009 WL 2447791, at *3, *aff'd*, 374 F. App'x 475 (5th Cir. 2010). In this case, CEATS represented to the Court that it lacked the funds to pay its sanctions even though it really just decided that it is "not going to pay the sanction. . . . [b]ecause [they] don't want to." (Ex. A, Anderson Dep. Tr. at 55:2.) As repeatedly noted, CEATS had almost all of the funds necessary to pay the sanctions at the end of 2023 and continued raising money into 2024, yet CEATS still did not pay. *See supra* Part IV.B. CEATS' deliberate decision not to pay "[b]ecause [they] don't want to" is the sole reason TicketNetwork continued to incur costs after the Sanctions Order deadline.

The requested fees are proper civil contempt sanctions. Imposing these fees would incentivize compliance with the Court's orders. Moreover, the requested fees are still compensatory because they are tied to real costs that TicketNetwork incurred and would otherwise bear due to CEATS unwillingness to comply with the Sanctions Order.

> **3. Should the Court agree with TicketNetwork that attorney's fees and costs are warranted, TicketNetwork requests supplemental briefing to advocate for the proper amount. If CEATS is unable to pay the sanctions owed within thirty days of the requested civil contempt sanctions order, then all right, title, and interest in CEATS patents should be assigned to TicketNetwork.**

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed . . . to coerce the defendant into compliance with the court's order." *Am. Airlines*, 228 F.3d at 585 (quoting *United Mine Workers,* 330 U.S. at 303–04). Courts are permitted to impose conditional sanctions for the purpose of compelling the contemnor to comply with the court's order, provided the amount is reasonably designed to force compliance, without being punitive. *In re Dinnan,* 625 F.2d 1146, 1149 (5th Cir. 1980) (per curiam) (citing *United Mine Workers,* 330 U.S. at 303–04). While these sanctions are often monetary, courts can also impose injunctive sanctions. *See id.* (holding witness in custody until he stops violating the court order to testify). Moreover, in the bankruptcy context, courts in this Circuit have "concluded that they can take [normally exempt] assets into account, *or seize them outright, when imposing sanctions under civil contempt orders.*" S*ec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2019 WL 277621, at *3 (N.D. Tex. Jan. 22, 2019) (emphasis added) (collecting cases).

Here, CEATS has feigned inability to pay the Court's Sanctions Order and expressed an unwillingness to seek additional funds. *See supra* Part IV.B. Conditionally ordering CEATS to assign its patents creates coercive pressure to comply with the Court's orders—CEATS can either pay the amounts that it owes to TicketNetwork, or it can have those orders reduced to judgments along with an order to assign its patents to TicketNetwork.[4] Thus, the Court can and should

---

[4] CEATS' patents are expired, and TicketNetwork believes that their value is, if anything, minimal. Indeed, the patents' combined value is likely less than CEATS' outstanding sanctions debt.

conditionally require that CEATS assign all right, title, and ownership in its patents to TicketNetwork should it fail to pay all sanctions imposed on it.[5]

### 4. CEATS should pay recurring $1,000 daily fines until it fully complies with the Sanctions Order and any contempt sanctions that this Court imposes.

Courts can impose daily fines as a coercive sanction. *White-Robinson*, 777 F.3d at 797–98. Here, "given [CEATS'] apparent obduracy in refusing to pay the sanctions, imposing an additional fine of" $1,000 "per day of nonpayment [is] reasonably calculated to coerce compliance and was not excessive or overly harsh." *Id.* at 798. Though the requested daily fine here is larger than *White-Robinson*'s, a larger daily fine is justified given that the outstanding sanctions are more than three times larger. *Id.* at 798 (imposing a $100 daily fine for an unpaid sanctions award of $25,000).

### 5. The pending appeal of this Court's previous sanctions order is irrelevant.

"Until the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions." *Resol. Tr. Corp. v. Smith,* 53 F.3d 72, 76–77 (5th Cir.1995) (cleaned up). Here, CEATS did not obtain a stay of this Court's Sanctions Order pending appeal. Thus, this Court "retain[s] jurisdiction to enforce the Sanctions Orders through any appropriate means, including a civil contempt order." *In re White-Robinson*, 777 F.3d 792, 796 (5th Cir. 2015).

### D. Should the Fifth Circuit remand for insufficient evidence of bad faith, the Court should consider the latest entries in CEATS' pattern of deceit and willful disobedience as bad faith and reimpose the same sanctions.

CEATS' misrepresentations to the Court and its flat refusal to comply with this Court's Sanctions Order are the latest entries in a series of willfully disobedient, bad faith acts. To the

---

[5] TicketNetwork invites the Court to remind Mr. Anderson that a continued failure to ask shareholders for additional funds can result in his confinement until he does so. *See Smith v. Smith*, 194 F.3d 1309 (5th Cir. 1999) (affirming civil confinement of witness who refused to produce certain documents, noting that confinement could continue until the documents were produced; *In re Dinnan*, 625 F.2d 1146, 1150 (5th Cir. 1980) ("Dinnan in not entitled to be released from custody so long as he is in violation of a valid underlying order to testify.").

extent that CEATS' most recent appeal is successful, TicketNetwork requests a reexamination of CEATS' pattern of misconduct to determine whether its additional misrepresentations and willfully disobedient acts would support this Court's Sanctions Order under its inherent powers. These new facts support this Court's prior findings, similarly showing that "the reimposition of the Litigation and Licensing Bars is warranted." (Dkt. 556 at 24.) Much like Mr. Skane's actions were imputed to CEATS as CEO, (Dkt. 556 at 31), Mr. Anderson's actions as Chairman of the Board and CFO, and those representations that CEATS made through its attorneys, should be imputed to CEATS.

CEATS' misrepresentations about its ability to pay and its attempts to raise money support a finding of willfulness. Indeed, this Court explained that making "false statements to the Court" supports a finding of willfulness. (Dkt. 556 at 27.) Here, continuing its habit of making "false statements to the Court," (*id.*), CEATS' latest representations are inconsistent with facts revealed in discovery in at least three ways.

***First***, contrary to CEATS' representations to the Court, it failed to pay the additional $79,827.53 due to willful disobedience. CEATS claimed that its "failure to pay the additional $79,827.53 required by the Court's Order is due to a present inability to pay rather than any willful disobedience of the Court's Order." (Dkt. 566 at 2.) But CEATS' Chairman and CFO agreed he "would just disregard Judge Gilstrap's order because [he didn't] want to pay the sanction." (Ex. A, Anderson Dep. Tr. at 55:3–6.) He clarified why: "I'm not going to pay the sanction. . . . [b]ecause I don't want to." (*Id.* at 54:24–55:2.) This is willful disobedience.

***Second***, contrary to CEATS' representations to the Court, it had not attempted to raise funds to pay the additional due. CEATS argued that its "counsel . . . informed TicketNetwork's counsel that CEATS is actively attempting to raise funds to make the required payment." (Dkt.

14

566 at 2.) But CEATS had not "asked any of its shareholders for additional money to pay the Court sanctions." (Ex. A, Anderson Dep. Tr. at 50:21–24.)

**Third**, omitted from CEATS' representations to the Court, was that it had most of the necessary funds to cover most of the outstanding $79,827.53 due. It represented to the Court that "CEATS requires additional time to raise the necessary funds because CEATS presently does not have sufficient funds to pay the entirety of the $79,827.53 in order to comply with the Court's March 22, 2024 Order." (Dkt. 566 at 2–3.) But at the end of 2023, CEATS had $68,821 in cash and raised an additional $30,000 after the Court's order. (Ex. A, Anderson Dep. Tr. at 39:23–40:1 ($68,821), 62:6–8 ($30,000); *see also* Ex. B, CEATS Inc. 2023 Financial Statements.)

Moreover, CEATS' refusal to pay or attempt to raise funds to pay its sanctions amount to another instance CEATS' bad faith conduct. Previously, this Court found bad faith where the "conduct rises to the level of an intentional, willful violation of the discovery order as required supporting this bad faith finding." (Dkt. 556 at 27.) Here, CEATS' Chairman and CFO agreed he "would just disregard Judge Gilstrap's order because [he didn't] want to pay the sanction." (Ex. A, Anderson Dep. Tr. at 55:3–6.) He clarified why: "I'm not going to pay the sanction. . . . [b]ecause I don't want to." (*Id.* at 54:24–55:2.) He did not dispute that his actions contravene the Court's Sanctions Order.

## V.    CONCLUSION

For these reasons, the Court should hold CEATS in civil contempt and impose the following sanctions:

1. CEATS should pay reasonable interest on the amount due, dating back to the Court's Sanctions Order deadline (May 21, 2024).

2. CEATS should pay fees and costs incurred in the litigation after the Court's Sanctions Order deadline (May 21, 2024). Moreover, this Court should grant TicketNetwork leave for supplemental briefing to determine the amount of fees and costs to be imposed.

3.  CEATS should pay recurring $1,000 daily fines until it fully complies with the Sanctions Order and any contempt sanctions that this Court imposes.

4.  If CEATS is unable to pay the sanctions owed within thirty days of the requested civil contempt sanctions order, then CEATS should assign all right, title, and interest in (including that for any past damages or license agreements involving) its patents to TicketNetwork.

5.  Should the Fifth Circuit remand for insufficient evidence of bad faith, the Court should consider the latest entries in CEATS' pattern of deceit and willful disobedience as bad faith and reimpose the same sanctions.

Moreover, the Court should grant TicketNetwork leave to seek to have the sanctions awards (both compensatory and coercive) reduced to judgments in thirty days if unsatisfied.

Dated: April 7, 2025

Respectfully submitted,

By:    /s/ Matthew A. Colvin
Matthew A. Colvin
Texas Bar No. 24087331
colvin@fr.com
Neil J. McNabnay
Texas Bar No. 24002583
mcnabnay@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
Michael R. Ellis
Texas Bar No. 24102726
ellis@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: 214-747-5070
Facsimile: 214-747-2091

Jennifer Leigh Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
McKool Smith – Marshall
104 East Houston St., Suite 300
Marshall, TX 75670
Telephone: 903-923-9000
Facsimile: 903-923-9099

Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
Ward, Smith & Hill, PLLC
P.O. Box 1231
1507 Bill Owens Parkway
Longview, TX 45604
Telephone: 903-757-6400
Facsimile: 903-757-2323

**COUNSEL FOR DEFENDANTS
TICKETNETWORK, INC. and
TICKET SOFTWARE LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on April 7, 2025, to all counsel of record who are deemed to have consented to electronic service.

> /s/  Matthew A. Colvin
> Matthew A. Colvin

## ~~CERTIFICATE TO FILE UNDER SEAL~~

~~This is to certify that this document should be filed under seal because it contains material covered by the Protective Order approved and entered in this case on August 8, 2017 (Dkt. No. 72).~~

> ~~/s/  Matthew A. Colvin~~
> ~~Matthew A. Colvin~~