**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CEATS, INC., | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 2:15-CV-01470-JRG |
| TICKETNETWORK, INC., and TICKET SOFTWARE, LLC, | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Recalculate Fees on Remand ("Motion"). (Dkt. No. 602.) Also before the Court are two related motions for the disbursement of funds that are held in the Court's registry ("Requests"). (Dkt. Nos. 611, 614.) Having considered these motions, the associated briefing, and the documents submitted in support thereof, the Court finds that the Motion should be **GRANTED IN PART** and that the Requests should similarly be **GRANTED**.

## I. BACKGROUND

This Order addresses one main issue: to what extent the Court's prior calculation of $471,220.38 in attorneys' fees should be modified in light of the Fifth Circuit's recent instructions. *See CEATS, Inc. v. TicketNetwork, Inc.*, No. 24-40230, 2025 WL 2945804, at *10–12 (5th Cir. Oct. 17, 2025) ("[W]e observe that Ticket's limited relief likely supports such a decrease to the fee award . . . ."). Pertinent background information for this issue is set forth below; additional background information can be found in the Fifth Circuit's most recent decision. *Id.* at *1–5.

More than a decade ago, Plaintiff CEATS, Inc. ("CEATS") filed a patent infringement lawsuit against Defendants TicketNetwork, Inc. and Ticket Software, LLC (collectively, "Ticket"). The case eventually settled and Ticket obtained a license to use CEATS's patents.

Ticket subsequently filed the above-captioned lawsuit seeking declaratory relief as to the license, and CEATS filed counterclaims that Ticket breached the license. The Court entered a protective order, and the case proceeded to trial only on CEATS's counterclaims. The jury ultimately found that $459,800 would compensate CEATS for Ticket's breach of the license. (*Id.*)

Thereafter, CEATS breached the protective order of this case by mishandling Ticket's confidential business information. (Dkt. No. 448 at 24, 25.) CEATS's then-CEO, Milford Skane, had asked Dr. Brian Billett, his litigation consultant, to send him a confidential list of Ticket's business affiliates that Ticket produced during discovery. Pursuant to the protective order, however, Mr. Skane was not permitted access to the confidential affiliate list. Nonetheless, Mr. Skane obtained a copy of it from his consultant and sent the affiliate list to Ticket's CEO. Mr. Skane explained it was a "starting point" to revive the companies' stalled settlement negotiations. (*Id.* at 8.)

The Court sanctioned CEATS for its protective order violation. (Dkt. No. 477.) The Court determined that Mr. Skane had violated the protective order by improperly communicating confidential materials and failing to take reasonable care with such materials. The Court further determined that CEATS had violated the protective order because Mr. Skane was acting within the scope of his employment. It ordered sanctions against CEATS in the form of attorneys' fees and barred CEATS from suing or otherwise contacting any affiliate in Ticket's affiliate list ("Litigation Bar").

CEATS appealed the sanctions ordered against it on two separate occasions. In the first appeal, the Fifth Circuit instructed this Court to recalculate the attorneys' fees sanction. *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 328 (5th Cir. 2023). It also vacated the Litigation Bar, explaining that such a bar required evidence of bad faith conduct. *Id.* The Court subsequently

issued an order that included revised calculations and reinstated the Litigation Bar. (Dkt. No. 556.) This issue then went back up on appeal for the second time.

In the second and most recent appeal, the Fifth Circuit did not find error in the Court's calculation of $471,220.38 in attorneys' fees. *CEATS*, 2025 WL 2945804, at *10–12. However, the Fifth Circuit found that this Court improperly increased this calculation by 5% to adjust for time demands in rendering the legal services. *Id.* The Fifth Circuit reasoned that the calculated $471,220.38 value already accounted for such timing considerations, and that Ticket's limited relief instead "likely supports . . . a decrease to the fee award." *Id.* It set aside the Litigation Bar because it found that Ticket did not suffer substantial prejudice from CEATS's discovery violation. *Id.* It then remanded the fee calculation issue for this Court "only" to determine to what extent the $471,220.38 in attorneys' fees calculation should be decreased. *Id.* at *13. That is the issue which this Order addresses.

## II. LEGAL AUTHORITY

"When a court awards attorney fees as part of a sanction under Rule 37, it generally . . . must use the familiar two-step lodestar process." *CEATS v. TicketNetwork, Inc.*, 71 F.4th 314, 326 (5th Cir. 2023). Under the first step, a court must calculate the "lodestar," which is equal to the number of hours reasonably expended multiplied by an appropriate hourly rate (excluding hours that are excessive, duplicative, or inadequately documented). *Id.* To determine this value, the court must look to the market rate in the community for similar work and give a "reasonably specific explanation for all aspects of a fee determination." *Id.* at 327 (citation omitted).

Under the second step, a court must consider whether the lodestar amount should be adjusted according to the factors described in *Johnson v. Georgia Highway Exp., Inc.* *Id.* (citing 488 F.2d 714 (5th Cir. 1974)). That case described the following twelve (12) factors:

(1) The time and labor required for the litigation;

(2) The novelty and difficulty of the questions presented;
(3) The skill required to perform the legal services properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the result obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The undesirability of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

*See Johnson*, 488 F.2d at 717–19. Although there is a "strong presumption" that the lodestar value represents a sufficient fee, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010), "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Such weighing ultimately is "always difficult," and "in all probability . . . will be totally satisfactory to no one." *Johnson*, 488 F.2d at 720.

## III. ANALYSIS

### A. The Lodestar Calculation

At step one of the analysis for calculating attorneys' fees, the Court previously calculated that the appropriate fee lodestar was $471,220.38. (Dkt. No. 556 at 54.) The Fifth Circuit did not find an error in this calculation. *CEATS*, 2025 WL 2945804, at *10–12. So the Court next turns to the step two analysis to determine whether this $471,220.38 lodestar should be adjusted.

### B. Adjustments to the Lodestar Calculation

Step two of the analysis for ordering an attorneys' fees sanction requires the Court to determine whether the $471,220.38 lodestar should be adjusted. *See CEATS*, 71 F.4th at 327. As noted, the Fifth Circuit found that this Court erred by increasing the $471,220.38 lodestar by 5%. *Id.* It reasoned that the calculated $471,220.38 value already accounted for the timing

considerations this Court used to justify the 5% increase, and that Ticket's limited relief instead "likely supports . . . a decrease to the fee award." *Id.* It then remanded the fee calculation "only" for this Court to determine to what extent the $471,220.38 in attorneys' fees should be decreased in light of the *Johnson* factors. *Id.* at *13.

Ticket argues that the Court should reduce its previous fee award by eliminating the 5% enhancement and then reducing the award by another 5%, from $471,220.38 to $447,659.36. (Dkt. No. 602 at 3.) Ticket says this adjustment would compensate Ticket for costs that it incurred due to CEATS's discovery misconduct, and would account for its lack of success with respect to the Litigation Bar that the Fifth Circuit reversed. (*Id.*) Ticket also argues that an award of $447,659.36 would be less than the $651,944.88 in fees and $459,800 in damages that CEATS previously obtained. (*Id.* at 4.)

CEATS, however, argues for decreasing the lodestar amount by 50%—from $471,220.38 to $235,610.19. (*See* Dkt. No. 604 at 6.) CEATS contends that the Court should make this adjustment under *Johnson* factor 8, which considers the amount involved and results obtained. (*Id.*) It stresses that the Fifth Circuit expressly directed this Court to reconsider the attorneys' fees award because the Litigation Bar was reversed on appeal. (*Id.*) It also argues that even years after CEATS used and shared Ticket's confidential affiliate list, the record contains no evidence of lost business, competitive injury, compromised affiliates, or concrete damages of any kind. (*Id.* at 7, 8.)

The Court now finds that, upon carefully analyzing the *Johnson* factors and applying the most recent guidance from the Fifth Circuit, a decrease in the $471,220.38 lodestar amount is warranted. The Court's revised reasoning as to these factors is as follows. *See Johnson*, 488 F.2d at 717–19.

**Factors 1 (Time and Labor Required) and 7 (Time Limitations Imposed by Client or Circumstances)**: The Court previously reasoned that a 5% upward adjustment to the lodestar value was warranted when considering these factors. (Dkt. No. 556 at 55, 57, 58.) However, the Fifth Circuit explained that this *Johnson* adjustment mirrored the time (billed hours), labor (number of attorneys), and urgency that the Court already accounted for at step one. *CEATS*, 2025 WL 2945804, at *11, *12. Accordingly, the Court does not find that these factors warrant an upward adjustment to the lodestar.

**Factors 2 (Novelty and Difficulty of Issues) and 3 (Skill Required)**: The Court finds that these factors are neutral, consistent with its prior finding for these factors. The Court's step one lodestar analysis considered how CEATS's protective order violations involved a complex forensic investigation, an analysis of the deletion of emails, and a source code review. (Dkt. No. 556 at 52.) The Court, however, does not find such difficulties and skill required for this work to justify increased fees at step two. The Court's step one analysis already accounts for the difficulty and skill required for such work.

**Factor 4 (Loss of Other Employment in Taking the Case)**: The Court finds that this factor weighs in favor of decreasing the lodestar by 10%. *See CEATS*, 2025 WL 2945804, at *12 ("[T]he district court will need to determine whether any other Johnson factor supports a decrease to the lodestar."). Fish & Richardson, the law firm that represents Ticket, has hundreds of attorneys and regularly handles complex and technical cases. The Court finds that the time spent on this matter (primarily by three attorneys) did not foreclose business opportunities for this national firm, and a relatively modest downward adjustment is thereby warranted.

**Factors 5 (Customary Fee) and 6 (Whether the Fee Is Fixed or Contingent)**: The Court finds that these factors are neutral, consistent with its prior analysis for these factors. (*See* Dkt. No. 556 at 56.)

**Factor 8 (Amount Involved and Results Obtained)**: The Court finds that reconsideration of this *Johnson* factor warrants a 40% decrease to the lodestar calculation. "[T]he most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. Such considerations merit a material decrease to the lodestar.

The Fifth Circuit has explained that Ticket's "limited relief" regarding its sanctions litigation, which largely amounted to a fee award for a discovery violation, "likely supports . . . a decrease to the fee award under *Johnson* factor 8" and that "Ticket suffered no harm over the last five years as a result of CEATS's discovery violation." *CEATS*, 2025 WL 2945804, at *12. Weighing these aspects, the Court finds that Ticket's success was limited to an award of attorneys' fees for a discovery violation. There also is no evidence that Ticket suffered harm to its underlying business as a result of the violation. Moreover, an award of attorneys' fees of the $471,220.38 lodestar would be more than CEATS's $459,800 jury award in the underlying litigation. *See id.* (noting "the fact that the award of attorneys' fees was more than CEATS's jury award in the underlying litigation"). However, the Court also considers that Ticket's discovery litigation may have deterred CEATS from further misusing Ticket's confidential business information. On balance, the Court finds that it is appropriate to decrease the lodestar amount by 40% under this factor.

**Factor 9 (Counsel's Experience, Reputation, and Ability)**: The Court has already accounted for Fish & Richardson's experience, reputation, and ability in explaining the discrepancy between the rates billed by CEATS and Ticket's attorneys. (Dkt. No. 556 at 52, 53.) Accordingly, the Court finds that this factor remains neutral.

**Factor 10 (Case Undesirability)**: The Court finds that this factor is also neutral. The *Johnson* Court explained for this factor that "[c]ivil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant," which may merit a fee adjustment. 488 F.2d at 719. The Court does not find that the work here resulted in similar hardships for Fish & Richardson and its attorneys to defend their clients from a discovery order violation; the Court sees no negative impact on Ticket's counsel for conducting this work.

**Factor 11 (Nature and Length of Relationship with Client)**: The Court finds that this factor is neutral. The Parties have not shown the Court how this factor would reduce the lodestar, and, in any event, the Court finds that this factor is accounted for in the hourly fees charged by Fish & Richardson.

**Factor 12 (Awards in Similar Cases)**: The Court finds that this factor is neutral. The Parties' briefing for the Motion does not address this factor specifically. Nonetheless, the Court notes that the Fifth Circuit has not found error when considering 25%, 50% and 82% reductions to lodestar values. *Groff Tractor Mid Atl., L.L.C. v. Rubble Master Americas Corp.*, No. 25-10781, 2026 WL 687196 (5th Cir. Mar. 11, 2026) (affirming 25% lodestar reduction); *Martinez v. Ranch Masonry, Inc.*, 760 F. App'x 288, 291 (5th Cir. 2019) (affirming 50% reduction); *Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 431, 433 (5th Cir. 2017) (affirming 82% reduction). Taken in aggregate, the Court's above reductions (10% and 40%) reduce the lodestar value by a total of 50%, which falls within the range of other lodestar reductions approved in this Circuit.

Taken together, the Court finds that a fair application of the *Johnson* factors supports a combined 50% downward adjustment to the lodestar value. As a result, the resulting total sanction against CEATS amounts to $235,610.19, which is 50% of the lodestar that the Court calculated previously. This finding rests on the Court's consideration of the totality of the circumstances and the most recent guidance from the Fifth Circuit.

Given that Ticket previously received $494,781.20 from CEATS to comply with prior sanctions orders (*see* Dkt. No. 601 at 3) (which is greater than the above $235,610.19 the Court calculated for this Order), **Ticket shall pay CEATS $259,171.01**.[1] **Ticket shall also pay interest on the $259,171.01** it pays to CEATS based on the statutory post-judgment rate set forth in 28 U.S.C. § 1961. *See id.* ("[I]nterest shall be calculated from the date of [this Order], at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of [this Order]. . . . Interest shall be computed daily to the date of payment . . . and shall be compounded annually."). The interest value for the calculation shall be at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of this Order; interest shall be computed daily to the date of payment during the interest calculation window and shall be compounded annually. *See id.* The interest calculation window runs from the date Ticket first held more than $235,610.19 of CEATS's money that CEATS paid to comply with sanctions orders through the date that Ticket repays CEATS as ordered herein; the interest calculation shall be based on the

[1] The $259,171.01 value equals $494,781.20 (the value that Ticket received from CEATS) minus $235,610.19 (the 50% reduction to the Court's $471,220.38 lodestar value).

amounts of CEATS's money that Ticket held on a given date during the interest calculation window.

### C. Money Owed to Dr. Brian Billett's Estate

Other payments are also due to resolve this case. (*See* Dkt. Nos. 611, 614.) Specifically, the Estate of Dr. Brian Billett is owed $90,500.

CEATS's former consultant, Dr. Brian Billett, paid Ticket $90,500 to comply with a prior sanctions order in this case. (*See* Dkt. No. 493.) Ticket, in turn, paid $90,000 of the $90,500—$500 less than the $90,500 it received from Dr. Brian Billett—into the Court's Registry while CEATS appealed its sanctions. (Dkt. No. 547.) *See CEATS, Inc. v. TicketNetwork, Inc.*, No. 24-40230, 2025 WL 2945804, at *3 n.5 (5th Cir. Oct. 17, 2025) ("Interestingly, Ticket deposited only $90,000 into the district court's registry, and the parties have not addressed or mentioned the remaining $500 paid by Dr. Billett.").

After the appeal and the Court denied Ticket's motion to reimpose sanctions against Dr. Brian Billett, the Court ordered that the Estate of Dr. Brian Billett shall receive the $90,000 Ticket deposited and held in the Court Registry "[u]pon receipt of satisfactory information." (Dkt. No. 556 at 59.) The Court has now received such satisfactory information from the Estate of Dr. Brian Billett and its designated representative, and the related Requests to Release Funds (Dkt. Nos. 611, 614) are **GRANTED**.

Accordingly, the Clerk of Court shall deliver to Jeffrey Nelson Billett as Independent Administrator of the Estate of Dr. Brian Billett the $90,000 Ticket paid into the Court Registry, together with the interest that the $90,000 accrued while deposited in the Court Registry.

**Ticket shall pay $500 to Jeffrey Nelson Billett** as Independent Administrator of the Estate of Dr. Brian Billett. This represents the amount Ticket previously received from Dr. Brian Billett but never deposited in the Court Registry. **Ticket shall also pay interest on the $500** it pays

Jeffrey Nelson Billett as Independent Administrator of the Estate of Dr. Brian Billett. This interest calculation shall, consistent with the interest explanation in the preceding section, be paid based on the statutory rate set forth in 28 U.S.C. § 1961, and considering this Order, the March 2, 2022 date that Ticket first received the $500 (*see* Dkt. No. 493), as well as the date that Jeffrey Nelson Billett as Independent Administrator of the Estate of Dr. Brian Billett is finally paid in compliance with this Order.

## IV. CONCLUSION

For the reasons noted above, the Court finds that the Motion (Dkt. No. 602) should be and hereby is **GRANTED IN PART**, such that a total of $235,610.19 in attorneys' fees are awarded to Ticket as a sanction against CEATS. To comply with this Order, Ticket is **ORDERED** to pay over the following sums: $259,171.01 to CEATS; $500 to the Estate of Dr. Brian Billett; and interest on the sums it pays to CEATS and the Estate of Dr. Brian Billett as the Court described in the above sections of this Order.

Ticket shall pay the sums ordered herein *instanter* and shall file a notice on the docket evidencing its compliance herewith. Finally, it is **ORDERED** that the Clerk of Court shall deliver to Jeffrey Nelson Billett as Independent Administrator of the Estate of Dr. Brian Billett the sum of $90,000 that Ticket paid into the Court Registry, together with any and all accrued interest earned on that sum during its time within the registry of the Court. Thereafter, the Clerk of Court is directed to **CLOSE** this case.

**So ORDERED and SIGNED this 31st day of August, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE